**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 14, 2005
Decided June 21, 2005

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2440

| | |
|---|---|
| WEI LI ZHANG,<br>    *Petitioner*, | On Petition for Review of an Order of<br>the Board of Immigration Appeals |
| *v.* | No. A77-654-626 |
| ALBERTO R. GONZALES,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

Chinese citizen Wei Li Zhang applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that he was threatened with arrest on account of his membership in the "social group" of Chinese citizens who refuse to pay illegal taxes. The Immigration Judge denied relief, holding that Zhang had not alleged membership in any social group that would qualify him for asylum and that, regardless, he had not demonstrated past persecution or the likelihood of future persecution. Zhang appealed and the Board of Immigration Appeals affirmed without opinion. We deny Zhang's petition for review.

Zhang attempted to enter the United States through Chicago in March 2000 but was refused admission because he misrepresented his identity and lacked a valid immigrant visa. The INS placed him in removal proceedings the next month.

Zhang applied for asylum and withholding of removal, alleging in his application that he would be arrested and tortured if returned to China. He claimed Chinese police had tried to arrest him in August 1999 for "illegal activities" after he refused to pay fines arbitrarily assessed against his construction company for "not using sufficient materials for the buildings." He also stated that although he "did not practice any more," he had been involved with Falun Gong in China and had also been pursued by the police for that reason.

Zhang repeated the substance of his application in testimony at his hearing before an IJ in May 2003. He stated that he had been a construction worker in China for ten years when in August 1999 a "monitoring person from the government" began to visit the construction site frequently in an attempt to collect unspecified "illegal" taxes. Zhang refused to pay the amount sought, and seven policemen came to the construction site to coerce him into paying "the social protection fees." Believing he faced arrest, Zhang fled the construction site and hid out at his friend's home for a week, at which point he fled to the United States. Zhang did not elaborate on what kind of taxes the government sought or why they were illegal, other than to say, "[i]n my personal view those money my hard earn salaries so there's no reason for me to pay them for extra protection."

Zhang also testified that he practiced Falun Gong "for nearly three weeks" in July of 1999. A close friend brought him to a park where they participated in the Falun Gong exercises. Zhang stated that he did not encounter any "direct difficulties or trouble" as a result of his involvement in Falun Gong and that he no longer practiced the religion.

The IJ denied Zhang's application, holding that he had not established past persecution or the likelihood of future persecution. The IJ noted that Zhang "did not suffer any harm, was not arrested, was not detained[,]" and "did not even suffer any economic damage." Further, the IJ expressed skepticism that any of the treatment Zhang had described in his testimony could be attributed to his membership in a "social group" as defined by the INA. The IJ did not believe that individuals who refused to pay taxes in China were the sort of "cohesive, homogenous group" the INA intended to protect. Accordingly, Zhang had failed to meet his burden of proof and the IJ denied relief.

Zhang's sole argument on appeal is that the IJ erred in concluding that he did not have a well-founded fear of persecution based on his membership in a particular social group. He argues that he belongs to the group of "individuals who refuse to succumb to extortion by government officials" and that he will be persecuted based on his membership in this group if forced to return to China.

To qualify for asylum based on membership in a persecuted social group, an

alien must: 1) identify that social group, 2) establish membership in that group, and 3) establish that his well-founded fear of persecution is based on his membership in that group. *Yadegar-Sargis v. INS*, 297 F.3d 596, 603 (7th Cir. 2002). A social group is defined by a common characteristic its members share, "such as sex, race, kinship, or in some cases, past experiences such as former military service or land ownership." *Lwin v. INS*, 144 F.3d 505, 511 (7th Cir. 1998). Although the BIA initially required that the common characteristic binding the group be "immutable," we have subsequently held that characteristics that an alien could change, but should not be required to change "as a matter of conscience," are also included. *Ahmed v. Ashcroft*, 348 F.3d 611, 617 (7th Cir. 2003) (leaving open the possibility that police officers might constitute a social group, even though they had the ability to change their status by quitting).

Although it is possible that individuals opposing extortion might constitute a social group, we need not decide that point, because Zhang has not demonstrated that he has a well-founded fear of persecution based on his membership in that group. Although the INA does not define the term "persecution," we have held that it includes "non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe." *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004). Zhang has alleged only that the Chinese government attempted to collect taxes from him and then sought to jail him for his refusal to pay. He has not claimed that he was physically harmed or even threatened with physical harm, and unfulfilled threats are generally insufficient to establish past persecution. *See Ahmed*, 348 F.3d at 615 (finding of no persecution supported by substantial evidence where alien sequestered himself in desert and thus never suffered physical harm or the threat thereof). Nor does once being told to pay a tax constitute the "significant economic disadvantage" necessary to establish economic persecution. *See Capric*, 355 F.3d at 1092-93 (no significant economic disadvantage where alien was terminated from job and evicted from apartment due to political beliefs).

We have recognized that "not every victim of corruption can qualify for political asylum," noting that this relief should be reserved for those individuals who have engaged in "political agitation against state corruption." *Marquez v. INS*, 105 F.3d 374, 381 (7th Cir. 1997) (no likelihood of future persecution where alien criticized military corruption on national radio show; had alien joined an anticorruption political party, the case would have been stronger). Zhang has not alleged that he spoke publicly against government corruption nor sought to make changes to the system; he merely alleges in the most general terms that he himself was a victim of corruption. This is not sufficient to establish a likelihood of future persecution. *See id.*; *Ahmed*, 348 F.3d at 618 (alien must "present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution").

Accordingly, we DENY Zhang's petition for review.